IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUSSELL BUNKER,

    Plaintiff,

v.                                                           1:18-cv-00086-LF

ANDREW M. SAUL, Commissioner
of the Social Security Administration,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Russell Bunker's Motion to Reverse and/or Remand (Doc. 22), which was fully briefed on December 23, 2018. *See* Docs. 24, 25, 26. The parties consented to my entering final judgment in this case. Docs. 10, 13, 14. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred by failing to discuss Mr. Bunker's mental impairments when formulating his residual functional capacity ("RFC"). I therefore GRANT Mr. Bunker's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Id.*

### III.     Background and Procedural History

Mr. Bunker was born in 1954, graduated from high school, and worked "hit and miss" for 15 years, making between $300 and $600 per month delivering small loads of lumber for a friend who owned a lumber yard. AR 40–41, 170, 191.[3] Mr. Bunker filed an application for Supplemental Security Income ("SSI") on September 8, 2014, alleging disability since January 1, 1998 due to an incisional hernia, lower back problems, and a bad left knee. AR 170–76, 190. The Social Security Administration ("SSA") denied his claim initially on January 8, 2015. AR 101–03; Doc. 17-1 at 2. The SSA denied his claims on reconsideration on May 22, 2015. AR

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 17-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

3

107–11. Mr. Bunker requested a hearing before an ALJ. AR 112–14. On October 19, 2016, ALJ Doug Gabbard II held a hearing. AR 33–64. ALJ Gabbard issued his unfavorable decision on December 22, 2016. AR 15–32.

At step one, the ALJ found that Mr. Bunker had not engaged in substantial, gainful activity since his application date of August 15, 2014. AR 20. At step two, the ALJ found that Mr. Bunker had the following severe impairments: bilateral shoulder degenerative joint disease and osteoarthritis of the left knee. *Id*. The ALJ also found that Mr. Bunker had the following nonsevere impairments: mild back degenerative disc disease, abdominal hernia, insomnia, anxiety disorder, affective disorder, and substance addiction. AR 20–21. At step three, the ALJ found that none of Mr. Bunker's impairments, alone or in combination, met or medically equaled a Listing. AR 22. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Bunker's RFC. AR 23–25. The ALJ found Mr. Bunker had the RFC to "perform medium work as defined in 20 CFR 416.967(c) except the claimant can occasionally stoop and occasionally reach overhead bilaterally." AR 22.

At step four, the ALJ concluded that Mr. Bunker did not have any past relevant work. AR 25. The ALJ found Mr. Bunker not disabled at step five because he could perform jobs that exist in significant numbers in the national economy—such as laundry worker and dining room attendant. AR 26. Mr. Bunker requested review by the Appeals Council. AR 168–69. On December 3, 2017, the Appeals Council denied review. AR 1–6. Mr. Bunker timely filed his appeal to this Court on January 29, 2018. Doc. 1.[4]

---

[4] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 416.1481; *see also* AR 2–3.

### IV. Mr. Bunker's Claims

Mr. Bunker raises five arguments on appeal: (1) the ALJ erred by failing to discuss his mental limitations when formulating his RFC; (2) the ALJ's RFC finding that he can perform "medium work" is not supported by substantial evidence; (3) the ALJ erred in giving treating orthopedic surgeon Dr. Grace's opinion "little weight"; (4) the ALJ erred in giving consultative examiner Dr. McCarthy's opinion "little weight"; (5) the ALJ erred at step five in finding he could do jobs which require frequent or constant reaching. Doc. 22 at 16–21. I find that the ALJ erred by failing to consider Mr. Bunker's mental impairments in formulating his RFC. Because I remand based on this error, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V. Analysis

Mr. Bunker argues that the ALJ erred by failing to discuss his mental limitations when formulating his RFC. Doc. 22 at 12–13, 16; Doc. 25 at 1–2. He argues that instead of doing a proper RFC analysis, the ALJ merely relied on his step-two findings that his mental impairments were nonsevere. Doc. 22 at 12–13. Mr. Bunker argues that this error requires remand. The Commissioner argues that the ALJ adequately discussed Mr. Bunker's mental impairments at steps two and three of the sequential evaluation process. Doc. 24 at 5. The Commissioner asserts that the ALJ "reasonably declined to include any mental limitations in [Mr. Bunker's] RFC" based on his evaluation of these impairments at steps two and three. *Id.* For the following reasons, I agree with Mr. Bunker.

"[A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir.

2013). An ALJ may not "simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Id*. at 1065 (citing SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)). In assessing a claimant's RFC, an ALJ must "consider the combined effect of all medically determinable impairments, whether severe or not severe." *Wells*, 727 F.3d at 1069 (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).

At step two of the sequential evaluation process, the ALJ evaluates the effect of a claimant's mental impairments using a "special technique" to determine whether the mental impairment is "severe" or "not severe." *Wells*, 727 F.3d at 1064 (citing 20 C.F.R. §§ 404.1520a(b)−(d), 416.920a(b)−(d) (both effective June 13, 2011 through Jan. 16, 2017)). In applying this "special technique," the ALJ rates the degree of the functional limitation resulting from the claimant's medically determinable mental impairments in four broad functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id*. at 1068 (citing 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)). However, the

> criteria used at steps two and three of the analysis to evaluate mental impairments are "not an RFC assessment," and . . . "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]."

*Id*. at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *4, *7). In addition, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7.

In *Wells*, the ALJ found that the claimant had the medically determinable mental impairments of anxiety disorder and an affective disorder. *Wells*, 727 F.3d at 1068. At step two,

6

the ALJ found that these impairments were nonsevere because the claimant had mild restriction of activities of daily living, mild limitations in social functioning, mild limitations in concentration, persistence, or pace, and no episodes of decompensation. *Id*. After stating that the mental impairments were nonsevere, the ALJ stated at step two that "[t]hese findings do not result in further limitations in work-related functions in the [RFC] assessment below." *Id*. at 1069. The ALJ then failed to conduct the required detailed assessment of the claimant's mental limitations in formulating her RFC.[5] *Id*. at 1069–70. The Tenth Circuit held that "[t]he language used suggests that the ALJ may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments [and that] this was inadequate under the regulations and the Commissioner's procedures." *Id*. at 1065, 1069. The Tenth Circuit remanded for further analysis of the claimant's RFC.

*Wells* is directly on point and controls the outcome in this case. Here, the ALJ found that Mr. Bunker had three medically determinable mental impairments: anxiety disorder, affective disorder, and substance addiction. AR 21. At step two, the ALJ found that these impairments were nonsevere because the claimant had no limitations in activities of daily living, no limitations in social functioning, mild limitations in concentration, persistence or pace, and no episodes of decompensation. *Id*. After stating that these mental impairments were nonsevere, the ALJ stated at step two that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." AR 22. The ALJ then failed to conduct a detailed assessment of Mr. Bunker's mental limitations in formulating his RFC. *See* AR 22–25. As in *Wells*, "[t]he language used suggests that the ALJ

---

[5] The ALJ in *Wells* discussed some of the claimant's mental limitations in connection with his credibility determination in assessing her RFC. 727 F.3d at 1069–70. The Tenth Circuit found the ALJ's credibility conclusions were not supported by substantial evidence. *Id*. at 1071.

7

may have relied on his step-two findings to conclude that [the claimant] had no limitation based on [his] mental impairments." 727 F.3d at 1067. As in *Wells*, this is inadequate. An ALJ may not, as he has done here, "simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Id*. (citing SSR 96-8p, 1996 WL 374184, at *4).

As the Tenth Circuit pointed out in *Wells*, in assessing a claimant's mental RFC, the ALJ must assess a claimant's ability to do work-related mental activities "generally required by competitive, remunerative work"—including the ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6. In addition, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Wells*, 727 F.3d at 1069 (quoting SSR 96-8p, 1996 WL 374184, at *6).

In this case, the ALJ did not consider Mr. Bunker's mental impairments at all in fashioning his RFC.[6] *See* AR 22–25. The ALJ's RFC analysis contains no discussion of Mr. Bunker's statements concerning his mental limitations, and no discussion of the limitations noted in consultative examiner Dr. Owen's opinion. *See* AR 22–25. The record, however, is replete with statements from Mr. Bunker indicating that he was limited by his mental symptoms. *See* AR 90 ("I am having a real hard time with depression and anxiety. I feel like I can[']t take the edge off. I seclude myself a[]lot and don't like to leave my house."); AR 215 ("I will go several

---

[6] ALJ Gabbard committed the same error in another case, which that district court remanded. *See McCarty v. Berryhill*, No. CIV-16-151-SPS, 2017 WL 4233277, at *3 (E.D. Okla. Sept. 25, 2017) ("At step four, the ALJ summarized the evidence with regard to the claimant's severe impairment, and made no further findings related to the claimant's mental impairments.").

8

days without taking a shower.  I get sores on my scalp.  I just wear sweats most of the time[.]  I will wear them several days without changing."); AR 215 ("I try to read but I have to read things over and over and I forget."); AR 220 ("Depression is my dominant mood.  My thought process is chaos.  I am on a series of medications that keep me sedated[.]  I am not able to function with or without my medication.  I have a difficult time dealing with people in [g]eneral.  I can't maintain personal relationships.  I am easily agitated."); AR 230 ("[M]y depression has sever[e]ly increased.  I have a[]lot of suicidal ideation[;] my moods are always up and down.  One second I feel fine or I will just be angry the next.  I think about my childhood abuse all the time.  I have a really hard time sleeping[.] . . . I have problems with comprehension.  I can not focus if my mind is on something there is no getting my mind off of it."); AR 223 ("It takes me forever to make [a] decision and I get forgetful."); AR 225 (indicating that illnesses affect his memory, completing tasks, concentration, understanding, following directions, and getting along with others); AR 226 ("I [have] suicidal ideations.  I feel [p]aranoid that people are always talking about me even though they might not be.  If someone makes me angry I don't let it go.  I will dwell on it for weeks.  I have lost the desire to do things or know I can't.  I dwell on stuff that happened years ago like my surgeries that the doctors messed up on and can't stop thinking about it still and it[']s been years.").  In addition, Dr. Owen opined that Mr. Bunker had the following mental limitations:

- Mild to moderate difficulty in understanding and remembering detailed or complex instructions;
- Mild to moderate difficulty in the ability to carry out instructions;
- Mild difficult in the ability to attend and concentrate;
- Mild difficulty in the ability to adapt to changes in the workplace;
- Mild difficulty in the ability to use public transportation.

AR 289–90.

The Commissioner raises three arguments, none of which salvage the ALJ's flawed decision in this case. First, the Commissioner argues that the ALJ's analysis of Mr. Bunker's mental impairments at step two excuses his failure to analyze these impairments in formulating his RFC. Doc. 24 at 5. This argument fails as a matter of law. An ALJ may not "simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Wells*, 727 F.3d at 1065 (citing SSR 96-8p, 1996 WL 374184, at *4). Second, the Commissioner argues that the ALJ's RFC assessment does not have to mirror the ALJ's "paragraph B findings" at step two. Doc. 24 at 6. Mr. Bunker, however, does not argue that the ALJ's RFC assessment has to match the ALJ's step two findings. Doc. 25 at 2. Instead, Mr. Bunker is arguing that the ALJ erred in completely failing to discuss his mental limitations in formulating his RFC. Under *Wells*, the ALJ's failure to consider Mr. Bunker's mental impairments in fashioning his RFC is legal error requiring remand.

Third, the Commissioner argues that the ALJ's failure to discuss Dr. Owen's opinions in formulating his RFC is harmless error. Doc. 24 at 6–7. Because of the bar against *post hoc* rationalizations, the only possible way to salvage a legally flawed decision is a "harmless error" analysis. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In reviewing Social Security cases, harmless error applies only if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id*. The Commissioner's harmless error argument fails for two reasons. First, as discussed above, the ALJ's failure to discuss mental limitations in formulating Mr. Bunker's RFC is not limited to a failure to discuss Dr. Owen's opinion. The ALJ also failed to discuss any of the mental limitations Mr. Bunker reported. "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be

accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7. The Commissioner does not explain how this error is harmless.

Second, the Court also is not convinced that the ALJ's failure to discuss Dr. Owen's opinion in formulating Mr. Bunker's RFC is harmless. The Commissioner asserts that the ALJ's failure to discuss Dr. Owen's opinion in formulating his RFC is harmless because the ALJ limited Mr. Bunker to unskilled jobs at step five. Doc. 24 at 7. The Commissioner argues that unskilled work only requires the mental ability "to understand, carry out, and remember simple instructions." *Id*. (citing SSR 85-15, 1985 WL 56857 at *4). Dr. Owen, however, found that Mr. Bunker had mild to moderate difficulty in the ability to carry out all instructions—not just complex instructions. *See* AR 289. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857 at *4 (1985). In formulating the RFC, the ALJ must discuss any moderate limitations in these areas. *See Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished) (holding that unskilled work does not encapsulate a moderate limitation in the ability to carry out instructions). The ALJ's error therefore is not harmless. A "reasonable administrative factfinder, following the correct analysis," could have reached a different outcome. *Allen*, 357 F.3d at 1145. Remand is required.

## VI. Conclusion

The ALJ erred by failing to discuss Mr. Bunker's mental limitations when formulating his RFC. The Court remands so that the Commissioner can properly consider Mr. Bunker's mental limitations in assessing his RFC.

IT IS THEREFORE ORDERED that plaintiff's Motion to Reverse and Remand for Rehearing (Doc. 22) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent